LARRY COOPER *v*. STATE OF INDIANA.

[No. 673S112. Filed April 19, 1974.]

*Robert F. Craven, Craven & Milan,* of Indianapolis, *James L. Goodwin,* of Lebanon, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—On February 17, 1972, one Larry D. Yeager was shot and killed. A Greenfield policeman, having been alerted by a telephone call from the Marion County Sheriff's office, drove to the appellant's home. As the policeman was stopping his car in front of appellant's house, the appellant came out the front door, motioned for the policeman to stop and said that he, the appellant, was in trouble. The officer asked what kind of trouble and the appellant replied "take me to jail I shot a guy." Appellant was then taken to a police station where he made and signed a confession. The appellant was indicted, tried by jury and convicted of First

Degree Murder. He was sentenced to the state prison for life. He appeals.

The first issue appellant presents for review is that the evidence was insufficient to warrant a conviction. Specifically, appellant alleges that the necessary element of premeditation was not proved beyond a reasonable doubt.

When reviewing a claim of insufficient evidence, this Court looks only at the evidence most favorable to the appellee. We do not weigh the evidence nor resolve questions of credibility. *Buise* v. *State* (1972), 258 Ind. 321, 281 N. E. 2d 93; *Davis* v. *State* (1971), 257 Ind. 46, 271 N. E. 2d 893; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407. The jury heard testimony that Cooper, who testified that he habitually carried a gun, had gone to a construction site where he had recently been employed. On the site Cooper met the decedent, his former employer, and a private conversation between these two men ended when Cooper drew a gun and shot Yeager several times, continuing to shoot after Yeager had fallen to the ground. Cooper claims self-defense, saying that Yeager threatened him with a claw-hammer. Two witnesses testified that they did not at the time of the shooting see a hammer in Yeager's possession. A third witness said he had borrowed Yeager's hammer and had not yet returned it at the time of the shooting.

The appellant's attorney in his brief makes the following statements:

> "The *uncontroverted* evidence of Cooper was that he had gone to the construction site for the purpose of obtaining a pay check. (Tr. p. 375) That the victim Yeager became angry and attacked him with a claw hammer, placing him in fear of bodily harm and injury to his person. (Tr. p. 378) The further *uncontroverted* evidence is that he had fired in self defense.
>
> \* \* \*
>
> "In the case at bar, the *uncontroverted* evidence of the Defendant Cooper was that he was attacked by the decedent without warning when the decedent advanced upon him with a straight claw hammer raised with the claws facing the Defendant Cooper. (Tr. p. 391)" (our emphasis)

We realize that a lawyer should zealously plead his client's case. But surely no one who has read the transcript of the evidence in this case can, in good faith, say the evidence is "uncontroverted" that the appellant fired in self-defense. DR 7-102(A)(5) of the *Code of Professional Responsibility* states that: "In his representation of a client, a lawyer shall not: knowingly make a false statement of law or fact." The Court is entitled to a fair statement of the facts from attorneys on both sides, not an exaggerated, self-serving version of the facts or an omission of crucial facts. When the Court finds that it can not rely upon the statement of a lawyer, the lawyer has lost his effectiveness with the Court and has therefore, in fact, injured his client. We examined the transcript in this case and, as previously stated, since the evidence is conflicting we view only that evidence most favorable to the decision of the trial court. With the foregoing considerations in mind, we turn now to the issue of premeditation.

Premeditation may be proved by circumstantial evidence. That is to say, the element of premeditation may be inferred by the fact-finder from circumstances surrounding the killing. It is not necessary that an appreciable length of time exist before the premeditated intent to kill is formed. *Sanders* v. *State* (1972), 259 Ind. 43, 284 N. E. 2d 751; *Pierce* v. *State* (1970), 253 Ind. 650, 256 N. E. 2d 557; *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439.

> "Premeditated malice is the very essence of the crime with which the appellant was charged and convicted. This question comes to this court confirmed by the jury's conviction and approved by the trial court. That conclusion of the jury and the trial court must be taken to mean that, beyond a reasonable doubt, the appellant determined in his own mind, first, to take the life of the decedent, and, second, that he had the opportunity for premeditation; that time for reflection intervened between the thought to kill and the actual perpetration of the act of taking life. In order that there may be such premeditated malice as will make a killing murder in the first degree the thought of taking life must have been consciously conceived in the

mind, the conception must have been meditated upon, and a deliberate determination formed to do the act. Where the homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneous as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree."

*Everett* v. *State* (1934), 208 Ind. 145 at 149-50, 195 N. E. 77 at 79. The evidence in this case clearly allows an inference of premeditation.

Appellant raises several issues as to the admissibility of evidence. First, appellant questions the admission of a full confession and a waiver of Miranda-rights, both of which appellant signed on the day of the killing. A hearing was held on these issues, and it was determined that the confession and the waiver were signed voluntarily, intelligently and knowingly by the appellant. *Thompson* v. *State* (1971), 256 Ind. 48, 267 N. E. 2d 49; *Nacoff* v. *State* (1971), 256 Ind. 97, 267 N. E. 2d 165.

On appeal we will not ordinarily disturb a trial court's ruling as to the admissibility of a confession when that admissibility is based on conflicting evidence. *Smith* v. *State* (1969), 252 Ind. 425, 249 N. E. 2d 493; *Matthews* v. *State* (1959), 239 Ind. 252, 156 N. E. 2d 387. Appellant's testimony was that he did not understand what he signed. Appellant had a seventh grade education and was not illiterate. Appellant was given the following form; the form was read to him as he looked at it, and he then signed the form:

"Before we ask you any questions, you must know your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

*"Waiver of Rights*

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

We think it was not an abuse of discretion for the trial court to conclude that under the totality of the circumstances the State met its burden of showing that this defendant understood what he was signing. *Bauer* v. *State* (Ind. Ct. App. 1973), 300 N. E. 2d 364; *Lewis* v. *State* (1972), 259 Ind. 431, 288 N. E. 2d 138.

The appellant asserts that the trial court erred in admitting into evidence two twenty-five (25) caliber cartridge cases found near the body of the decedent and gives as reasons that the cartridges had not been connected with the defendant, that the body had been moved prior to the discovery of the cartridges, and that the area had not been cordoned off by the investigating officers. Appellant states that these factors show a failure of "relevancy or materiality." Appellant is mistaken. He attacks the weight to be given the evidence, not its relevancy. One of the facts purportedly in dispute was whether a shooting had occurred. Any evidence which tends to prove or disprove a disputed fact is relevant. 12 I. L. E. *Evidence* § 41 (1959). Furthermore, we note that Appellant has not set out how he was prejudiced by such evidence. He admits the shooting. In this case Appellant gave both an out-of-court and an in-court confession ("I shot him."). Thus, even if the cartridges were erroneously admitted, the error was harmless because that fact in question was otherwise established by proper evidence. 2 I. L. E. *Appeals* § 620 (1957).

Appellant's final contention is that the introduction of numerous pictures of the scene of the crime, each picture showing the dead body, was immaterial because repetitious of oral evidence by eye-witnesses, and that the pictures tended to inflame the emotions of the jury against the appellant. A witness's testimony may be supplemented by pictures. 8 I. L. E. *Criminal Law* § 207 (1971); *Leaver* v. *State* (1968), 250 Ind. 523, 237 N. E. 2d 368:

> "A photograph proved to be a true representation of a person, place, or thing which it purports to represent, is competent evidence of anything of which it is competent for a witness to give a verbal description."

*Wahl* v. *State* (1951), 229 Ind. 521, 532, 98 N. E. 2d 671, 676. As to the suggestion that the pictures were inflammatory, appellant does not specify what it is about the pictures that could inflame. In fact, all but one of the specified pictures are long-shots in no ordinary way gruesome or inflammatory; the one close-up is of the dead man's watch, showing the time of day.

In summary, the trial court did not commit prejudicial error. The judgment of the trial court is affirmed.

All justices concur.

NOTE.—Reported in 309 N. E. 2d 807.