ANTHONY WAYNE HALL v. STATE OF INDIANA.

[No. 875S185. Filed May 10, 1976. Rehearing denied August 10, 1976.]

Larry R. Champion, of Indianapolis, for appellant.

Theodore L. Sendak, Attorney General, Walter F. Lockhart, Deputy Attorney General, for appellee.

HUNTER, J.—Anthony Wayne Hall was indicted by the Grand Jurors of Marion County and charged with first degree murder in the death of Jean Crouch. Upon appellant's plea of not guilty by reason of insanity, the jury returned a verdict of guilty of second degree murder. He was sentenced to imprisonment for life. Appellant's motions to correct errors were overruled, and he appeals.

The first issue presented is whether the trial court erred in overruling appellant's motion to suppress oral and written statements obtained in violation of his constitutional rights. The facts surrounding the solicitation of appellant's statements are as follows. On July 20, 1973, a young lady in appellant's neighborhood was seized at gunpoint outside her home and taken to appellant's residence where she was raped. *Hall* v. *State,* (1975) Ind. App., 333 N.E.2d 913. On August 1, 1973, the body of Jean Crouch was discovered in an abandoned garage in the same neighborhood. The next day, Officer Parnell obtained a warrant to search the house where appellant resided with his sister, Mary Grever, for a "hand gun or evidence of the rape" occurring on July 20. When Officer Parnell went to the residence to execute the search warrant, he was admitted by appellant. The search warrant was read to appellant and he was placed under arrest for the rape and kidnapping of July 20. No *Miranda* warnings were given, although appellant was advised that he could not be questioned until permission was obtained from his legal guardian. Officers Adams and Swails, who were also present, transported appellant to the police station, leaving Officer Parnell behind to conduct the search. Upon arriving at the police station, appellant was taken to an interrogation room on the fourth floor. To reach the interrogation room, it was necessary for appellant to pass through the homicide office which was furnished with a table at the north end of the room. The victim of the July 20th assault just happened to be sitting on that table. When appellant saw her "his composure broke down a great deal." Following up on the momentum, Officer Adams whisked appellant into the interrogation room and began reading to him from the police department report on the rape and kidnapping. Officer Adams' reading was prematurely halted when appellant broke down and said, "You don't have to say anything, I did it."

While the foregoing events were transpiring, Mary Grever was contacted at her place of employment, told of her brother's

arrest, and advised to come to the police station without delay. When she arrived she was informed that her brother had confessed to the rape and kidnapping and that he was a prime suspect in the murder investigation.[1] She was taken into the interrogation room and was present when appellant was read his *Miranda* rights and advised that he could have one or both parents present. Appellant and his sister (acting as guardian)[2] were asked to execute a waiver and immediately did so. Appellant was questioned about the murder and gave the incriminating statement which was reduced to writing and admitted into evidence over objection at trial.

Appellant maintains that his confession was inadmissible because it was the product of a waiver which was not knowingly, voluntarily and intelligently made. The minimum standards for procuring a valid waiver from a juvenile were set forth in *Lewis* v. *State*, (1972) 259 Ind. 431, 288 N.E.2d 138. In *Lewis* we held:

> "[T]hat a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights. After such consultation the child may waive his rights if he so chooses provided of course that there

1. While the evidence conflicts upon whether Mary Grever learned of the murder charge *before* she executed the waiver, or after, we are bound by the trial court's resolution. Cooper v. State, (1974) 261 Ind. 659, 300 N.E.2d 807.

2. Appellant's natural father divorced his mother when appellant was two years old. When appellant's mother died, appellant moved in with his sister, and had lived with her several years prior to the incident at hand. Defense counsel argued that Mary Grever was incapable of giving the waiver required by Lewis v. State, (1972) 259 Ind. 431, 288 N.E.2d 138, because appellant's natural father was still alive and because Mary Grever was not a court-appointed guardian. For many years there had been no contact between appellant and his father, and when appellant was arrested, he asked that his sister, Mary Grever, be contacted. The state points out that for purposes of *Lewis*, the term guardian is not limited to a person appointed in a legal proceeding, but includes as well a " 'defacto guardian' who establishes his status by acting *in loco parentis.*" Brief of appellee, at 15. We agree with the state's analysis on this point and conclude that Mary Grever was such a guardian.

are no elements of coercion, force or inducement present." 259 Ind. 431, 439, 288 N.E.2d 138, 142.

The purpose of our holding in *Lewis* was twofold. First, our holding recognized that the special status accorded juveniles in other areas of the law was fully applicable in the area of criminal procedure. Secondly, to give effect to that status in the context of waiving "intricate, important and long established fifth and sixth amendment rights," we required that a juvenile be afforded a meaningful opportunity to consult with his parents or guardian about his predicament prior to the solicitation of any statement.

The *Lewis* decision was handed down in October of 1972. Appellant was arrested on August 2, 1973. The record demonstrates that the police knew appellant was a juvenile and could not be questioned without a parent or guardian present. Indeed, the waiver form signed by appellant and his sister was specifically drawn to demonstrate compliance with the procedural aspects of *Lewis:*

"THE INDIANAPOLIS POLICE DEPARTMENT ADVISES AS FOLLOWS:

"1. You have the right to have one or both parents present.
"2. You have the right to remain silent.
"3. Anything you may say can be used against you in court.
"4. You have the right to have a lawyer present now.
"5. If you do not have the money to retain a lawyer, you have the right to have one appointed for you by the court before any question [sic] are asked."

In addition to the waiver, the state relies upon the undisputed testimony of the officers that appellant was not questioned about the *murder* until after his sister arrived and the waiver was executed. The inquiry under *Lewis* does not cease when the mere presence of a parent or guardian has been established. The record must affirmatively demonstrate that the juvenile and his parent or guardian were afforded a meaningful opportunity to counsel

together. *Bridges* v. *State,* (1973) 260 Ind. 651, 299 N.E. 2d 616.

The record herein fails to meet the standard. The evidence conflicts as to whether the appellant was allowed to consult with his sister *prior* to the execution of the waiver and the solicitation of his confession. While a meaningful consultation can only occur in the absence of the neutralizing pressures which result from police presence, the record is unclear whether appellant and his sister were ever left alone prior to the execution of the waiver. The record is silent in regard to the time provided for consultation, and thus it cannot be determined whether the opportunity to consult was meaningful in relation to the seriousness of the offense under investigation. Where the record reveals nothing more than conflicting evidence, however, we are bound by the trial court's determination as to the admissibility of a confession. *Cooper* v. *State,* (1974) 261 Ind. 659, 309 N.E.2d 807. In addition to the foregoing evidence, however, this record demonstrates without conflict that appellant was arrested, taken to the police station, but not advised of any rights other than to have a parent or guardian present prior to questioning, immediately upon arrival was subjected to an illegal identification procedure, after which he lost his composure, and then confronted by a policeman reading from the rape and kidnapping report, all before his guardian was present. In *Lewis* we stated:

> "If the police are placed in a quandry when confronting a juvenile accused, the juvenile is perhaps in the most serious predicament of his short life. In most cases he is aware that he is in trouble. If not under formal arrest he is usually being questioned in a police-dominated atmosphere and finds himself in some instances cut off from anything familiar or comforting to him. Many times he faces his accusers alone and without benefit of either parent or counsel. It is in these circumstances that children under eighteen are required to decide whether they wish to give up the intricate, important and long established fifth and sixth amendment rights. It indeed seems questionable whether any child falling under the legally defined age

of a juvenile and confronted in such a setting can be said to be able to voluntarily, and willingly waive those most important rights." 251 Ind. 431, 437, 288 N.E.2d 138, 141.

When appellant's guardian arrived at the police station, the precise forces her presence was designed to protect against had already been fully applied by overzealous police activities, and under these circumstances there could be no meaningful consultation on whether appellant should forego his fifth and sixth amendment rights. We hold that the trial court erred in denying appellant's motion to suppress his oral and written statements which were the result of an invalid waiver.[3]

When a confession is suppressed because it was unlawfully obtained, evidence which is inextricably bound to the confession will also be suppressed upon proper objection, *Dowlut* v. *State*, (1968) 250 Ind. 86, 255 N.E.2d 173, unless it is shown that the evidence was discovered by some means independent of the illegal confession, *Watts* v. *State*, (1950) 229 Ind. 80, 95 N.E.2d 570. In his confession, appellant described the clothing which he was wearing when the crime was committed. Officer Parnell returned to appellant's residence with his sister, and she gave the officer a pair of blue jeans, a pullover sweater and a pair

---

3. Our holding in *Lewis* was fashioned to provide a special measure of care for juveniles prior to waiving the important constitutional rights which must be disclosed to them under *Miranda*. In reaching our holding herein, we are not unmindful of the recently narrowing boundaries of the *Miranda* decision. We find nothing in Michigan v. Mosley, (1975) 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed. 2d 313, however, which is inconsistent with this opinion.

In *Mosley*, the defendant was arrested in connection with certain robberies. Upon being advised of his constitutional rights under *Miranda*, Mosley declined to be questioned regarding the robberies. Several hours later, Mosley was again given *Miranda* warnings by another officer who then questioned him about an unrelated murder. It was held that Mosley's incriminating statement was properly admitted because (1) Mosley's right to cut off questioning had been scrupulously honored, and (2) the resumption of questioning occurred after a significant time lapse and after the *Miranda* warnings had been repeated.

In this case, the record discloses that appellant was first given his *Miranda* warnings and allowed to consult with his guardian after his confession to the rape-kidnapping had been elicited. Utilizing the momentum established by appellant's confession to the first crime, the officers immediately procured waivers and secured the statement incriminating appellant in the murder case.

of tennis shoes. The jeans and shoes with traces of blood on them were admitted as State's Exhibits Nos. 29, 30A and 30B. Also recovered was the lid of a box, on which was pictured and described a "Daisy B-B Six Gun Single Action— 12 Shot Repeater, Spittin' Image of the Famed Western Six Gun." The lid, State's Exhibit No. 28, was admitted into evidence. Appellant objected to the admission of each of these exhibits. For the reason expressed above, we hold that the trial court erred in failing to suppress State's Exhibits Nos. 29, 30A and 30B and all testimony relating thereto. The trial court did not err in admitting State's Exhibit No. 28, because it was merely cumulative of State's Exhibit No. 22, a photograph of the lid resting on top of a refrigerator at appellant's residence, said photograph being admitted without objection and having been taken by a police photographer at the time of a search authorized by valid warrant and prior to appellant's confession.

Since this cause must be remanded for a new trial, we find it unnecessary to review alleged errors predicated upon the trial court's denial of a change of venue from the county, denial of defendant's challenge of certain jurors, denial of permission to recall a witness for the purpose of asking an omitted question, and alleged prosecutorial misconduct in the closing statement. Other assigned errors may recur, however, and so we consider the following specifications for the trial court's guidance.

Appellant assigns as error the admission of testimony of M.W., the victim-prosecutrix of the July 20 rape. In view of appellant's plea of insanity, the state offered such testimony under *Stamper* v. *State,* (1973) 260 Ind. 211, 294 N.E.2d 609, to show appellant's consciousness of the wrongfulness of his act. Together with other evidence presented herein, it is clear that M.W.'s testimony was also admissible to establish a similar modus operandi between the acts and thus identify appellant as the perpetrator of the offense charged. *Cobbs*

v. *State*, (1975) 264 Ind. 60, 338 N.E.2d 632. There was no error in the admission of this testimony.

On direct examination, the state questioned its pathologist about the nature of the decedent's wounds appearing in several photographs taken at the autopsy and subsequently admitted into evidence. The pathologist identified the wounds as a fractured skull, stab wounds, and animal bites about the face. When asked to elaborate upon the bites, the pathologist stated, "The bites are superficial defects of the skin on the right side of the face and they look as those produced by ants or cockroaches, post mortem." Appellant argues, without authority for this proposition, that the prosecutor intended by this line of questioning to inflame the passions of the jury. Wo do not agree. We believe the questioning served to assist the jury in considering the photographs, by reminding them that such marks were not the cause of death and were not attributable to the defendant. See generally *Carroll* v. *State*, (1975) 263 Ind. 696, 338 N.E.2d 264. There was no error in this line of questioning.

Appellant asserts that the trial court erred in failing to give his instructions, No. 1 and No. 2. The thrust of these instructions was to inform the jury that if it found appellant not guilty by reason of insanity, he would not escape "just and merited punishment," but would be sentenced by the court at a subsequent judicial hearing. Appellant's contention is answered by the holding in *Coppenhaver* v. *State*, (1902) 160 Ind. 540, 551, 67 N.E. 453, 457:

> "[C]ounsel for the defense might with propriety in argument have called attention to or read the statute relative to the procedure in case a person is acquitted solely upon the ground of insanity. * * * It is not necessary that the court should instruct upon the subject, however, for such matter has nothing to do with the law of the case."

Judgment is reversed and the cause is remanded with instructions to grant appellant a new trial at which the evidence herein held to be suppressible shall not be admitted.

DeBruler and Prentice, JJ., concur; Arterburn, J., dissents with opinion in which Givan, C.J., concurs.

### DISSENTING OPINION

ARTERBURN, J.—I feel I should dissent from the majority opinion in which the conviction of the Appellant for second degree murder is reversed. The trial court is instructed to suppress certain oral and written statements by the Appellant and to similarly suppress physical evidence "inextricably bound" to those statements.

The evidence shows that the Appellant was about 17 years of age when he was arrested for the kidnapping and rape of one Margaret Wilson. The Appellant was at that time living with his sister, Mary Grever. Police had gone to their home with a search warrant when the Appellant was taken into custody. The validity of that search warrant is not challenged.

It was not until police entered the home that they suspected the Appellant had committed still another crime, the murder of one Jean Crouch. The body of this victim had been found in an abandoned garage in the neighborhood where the Appellant lived. This is the crime for which the Appellant was convicted. It is the Appellant's confession to this murder that is at issue here.

The written and oral statements in question were made after the Appellant's sister had joined him at the police station and after the two of them were advised of the Appellant's *Miranda* rights. The opinion, however, turns upon the requirement that the record must affirmatively show that a juvenile and his parent or guardian were afforded a meaningful opportunity to confer before the waiver of Fifth and Sixth Amendment rights. *Bridges* v. *State*, (1973) 260 Ind. 651, 299 N.E.2d 616. (I agree that the Appellant's sister was his guardian within the meaning of *Lewis* v. *State*, (1972) 259 Ind. 431, 288 N.E.2d 138.) The consultation itself which occurred between the Appellant and his sister is not

the focus of our attention. The evidence here conflicts, and we do not ordinarily overturn a determination of a trial court regarding the voluntariness of a confession when that determination is based on conflicting evidence. *Cooper* v. *State,* (1974) 261 Ind. 659, 309 N.E.2d 807. The opinion, rather, draws our attention to the circumstances leading up to that consultation. I do not agree with the conclusion that these circumstances precluded the possibility of meaningful consultation.

Listed in the opinion are the events preceding the Appellant's confession. He was "arrested, taken to the police station." This seems entirely appropriate. The Appellant at this time "was not advised of any rights other than to have a parent or guardian present prior to questioning." I can see no error here, as the Appellant was not questioned at this time and was later fully informed of his rights. The Appellant "was subjected to an illegal identification procedure." It is not explained where this happened. The Appellant was taken to an interrogation room. On the way he passed the victim of the kidnapping-rape for which he was arrested. Justice Hunter has not elaborated on the illegality of this. In any event, if the Appellant "lost his composure" I think this is simply evidence.

The only police conduct particularly out of the ordinary here was the reading to the Appellant of part of the kidnapping and rape investigation report. When this was done, the Appellant broke down and said, "You don't have to say anything, I did it." This was a confession to the crime for which the Appellant was arrested, not the one for which he was ultimately convicted. It was shortly after this statement that the Appellant's sister arrived. The Appellant and his sister were together informed of the Appellant's rights, as stated above. The waiver form was signed by the Appellant's sister upon his instruction. She was present during the questioning which resulted in his murder confession.

I do not believe these circumstances were so coercive as to

render meaningless the consultation the Appellant had with his sister. To me, the opinion of Justice Hunter comes close to saying that the mere presence of police officers constitutes a threat sufficient to make invalid any confession made to them. This would hamper normal police investigation since their very presence would be grounds for excluding competent evidence which they observed. We come close in this opinion to the imposition on police of a duty to assist a defendant in maintaining his composure. I find it difficult to imagine a confession, especially one by a juvenile, in which a loss of composure does not play at least some role.

I also think it is wise to ask whether the consultation requirement of the *Lewis* and *Bridges* cases is fully applicable to a case such as we have here. It is true that, at the time of his arrest, the Appellant was under the age of 18. I doubt, however, that he was a person of "tender age." This young man was old enough to commit rape and nearly old enough to vote. Furthermore, Ind. Code § 31-5-7-13 (Burns Supp. 1975) provides that juveniles charged with first degree murder should be tried in regular adult court. I think the rules of criminal procedure applicable to adults should perhaps also be applied to a juvenile of this age, charged with crimes of the sort found here.

Givan, C.J., concurs.

NOTE.—Reported at 346 N.E.2d 584.