WINFRED LEE GARRETT *v.* STATE OF INDIANA.

[No. 575S124. Filed July 13, 1976. Rehearing denied September 13, 1976.]

*C. T. Kitowski,* of Michigan City, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert M. Lingenfelter,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction for first degree murder following a trial by jury in the St. Joseph Superior Court. The trial took place on December 18, 1974, and was presided over by Judge E. Spencer Walton. Appellant received a sentence of life imprisonment.

Appellant's sole contention on appeal is that the trial court erred in overruling his pre-trial motion to suppress a confession obtained from appellant in violation of appellant's privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. Where as here the admissibility of a confession is so challenged, the State has the burden at the suppression hearing of proving that the defendant made a knowing and

intelligent waiver of the rights to remain silent and the right to counsel. *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Mims* v. *State,* (1970) 255 Ind. 37, 262 N.E.2d 638. When the challenged confession is that of a juvenile, in carrying this burden the State must show that the juvenile and his parents or guardian were informed of the right to remain silent and to have counsel, and that the juvenile then waived these rights after an opportunity was granted the child and his parents, guardian or attorney to consult about the rights and the advisability of waiving them. *Lewis* v. *State,* (1972) 259 Ind. 431, 288 N.E.2d 138. In Indiana, such a waiver must be shown to have occurred beyond a reasonable doubt. *Burton* v. *State,* (1973) 260 Ind. 94, 292 N.E.2d 790; *Magley* v. *State,* (1975) 263 Ind. 618, 335 N.E.2d 811.

In determining whether the State has met its burden, "[w]e will consider the evidence which supports the decision of the trier of fact in the case of contested evidence, and any uncontested evidence presented by the appellant." *Magley* v. *State, supra.* Those facts in this case follow.

On January 19, 1974, Elizabeth Carter was found dead in her home of a .22 caliber gunshot wound.

On February 18, 1974, appellant, who lived in a house 150 feet away from that in which Elizabeth Carter lived and was found shot, was taken into custody as a juvenile parole violator and as a suspect in the theft of a .22 caliber pistol from his mother's boyfriend, who lived in the same house as appellant. Appellant was sixteen years old at the time, a mental patient of "borderline intelligence," taking daily doses of tranquilizer-type medication on prescription from doctors at a psychiatric hospital. He was functioning as an educable retarded person, reading and writing and communicating in thought patterns and concepts appropriate to the third grade level. According to one psychiatrist whose opinions were submitted in the motion to suppress, appellant viewed himself as worthless "in a world inimical to his needs," and was

significantly limited in his ability to understand a charge of first degree murder and participate in the defense of that charge. Appellant took his daily dose of medication on February 18, 1974, the date he was arrested, but, thereafter, while in jail, had none of the medicine with him. During the thirty hours in custody prior to making the challenged confession, appellant ate only a hamburger and drank a coke.

On February 18, 1974, at 11:20 a.m., appellant was in the jail and was interrogated about the theft of the gun by two officers. He was read his *Miranda* rights and said he understood them. He was questioned and provided nothing to aid the prosecution in convicting him. No parent, friend, or relative was present during this advisement of rights and subsequent questioning. Thereafter, in the early afternoon of the same day, appellant's uncle was invited to come to the jail and aid the police in getting appellant to confess. The uncle arrived, but was also unable to extract a confession from appellant. Appellant was returned to his cell at 1:15 p.m.

On the next day, February 19, 1974, appellant was interrogated at the jail commencing at 1:40 p.m. by two officers, one of whom had participated in the interrogation the day before. Appellant was again given his rights, said that he understood them, and, under further interrogation about the stolen pistol and an attempted armed robbery, again provided the interrogating officer with no incriminating information. During this advisement of rights and interrogation, no parent, friend or relative was present. The interrogating officer testified that he did not attempt to call the mother of appellant, because he knew she was at work. At 4:00 p.m., appellant's mother arrived at the jail and went to an office. Appellant was brought into the room, and the interrogation continued by one of the officers. An advisement of rights was read to both appellant and his mother. This was the first meeting of appellant and his mother since he had been arrested. Appellant signed a form of written waiver which was witnessed by his mother. The interrogating officer remained in the office throughout the advice of rights and the signing of the

waiver. As soon as the waiver was signed by appellant and his mother, the officer left them alone together for the first time in order to get a cup of coffee for the mother. Thereafter, after two hours of continuous interrogation, appellant confessed to having shot the victim upon being discovered in the course of a burglary of her house.

On the basis of the evidence presented, the confession should not have been admitted in evidence. In 1972, prior to this interrogation in 1974, this Court handed down the opinion in *Lewis* v. *State, supra.* In that opinion we set forth in explicit and understandable terms, the procedure to be followed by the police in interrogating juvenile suspects. There, in order to add assurance that a juvenile's waiver of Fifth and Sixth Amendment rights in the interrogation context is truly voluntary, we said:

> "We hold therefore that a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights. After such consultation the child may waive his rights if he so chooses provided of course that there are no elements of coercion, force or inducement present." 259 Ind. at 439.

The holding was repeated by this Court in *Bridges* v. *State,* (1973) 260 Ind. 651, 299 N.E.2d 616, during the 1973 Term. And, in 1973, Missouri, relying upon *Lewis, supra,* adopted the same procedure for that State. *In re K.W.B.,* (1973) Mo. App., 500 S.W.2d 275. Most recently this Court dealt with the requirements of *Lewis* in *Hall* v. *State,* (1976) 264 Ind. 448, 346 N.E.2d 584, 587. There we said:

> "The inquiry under *Lewis* does not cease when the mere presence of a parent or guardian has been established. The record must affirmatively demonstrate that the juvenile and his parent or guardian were afforded a meaningful opportunity to counsel together."

In *Hall,* the confession of a juvenile was deemed inadmissible because the police did not provide a meaningful opportunity

for the juvenile to consult with his sister about the advisability of waiving the rights to counsel and to remain silent. So it is in the case at bar.

In this case, the inadequacy of the opportunity to consult stems from several sources. Here, the interrogator was acquainted with appellant and his circumstances. Appellant had only limited communicative skills, and the family had no money to hire a lawyer. For this reason, he and his mother needed more than a mere moment under the scrutiny of the interrogator to consider the rights and waiver. No one told appellant or his mother that they should take time to consult. Moreover, the form which was provided to them at the time of the advisement was to be signed by the mother on the line marked "witness." The designation of the mother as witness obfuscates the role intended by the law for her to play at the point of waiver, namely, that of advisor. Such obfuscation kept both mother and son from realizing that she was to be an active participant in the decision whether to speak to the police without an attorney present.

Additionally, the record reveals that, earlier in the afternoon, when arrangements were being made for the mother to visit her son, the officer invited her to encourage her son to confess and that, during the heated interrogation which followed the making of the written waiver, she did tell him to speak the truth. For this reason, the need for opportunity for a frank exchange of views between the mother and son was indicated. And finally, the record is uncontradicted that the police had interrogated appellant twice previously during this period of detention and, prior to such former interrogations, had advised appellant of his rights and questioned him without any prior consultation with a parent, relative, friend or attorney, in direct violation of the law governing the constitutional procedure for such interrogations. *Lewis* v. *State, supra.* The fact that appellant had previously made explicit waivers without consultation with friend or attorney would have diminished his appreciation of the value of such consultation. For this reason, the opportunity for consultation

was too short and perfunctory and too closely supervised to be deemed adequate. In light of these circumstances, the opportunity for meaningful consultation was not shown to be present.

We therefore hold that the trial court erred in denying appellant's motion to suppress the confession, and for such error the judgment of the trial court is reversed and the case remanded for a new trial at which this confession will not be admitted.

Hunter and Prentice, JJ., concur; Arterburn, J., dissents with opinion in which Givan, C.J., concurs.

### Dissenting Opinion

ARTERBURN, J.—I dissent from the majority opinion. On January 19, 1974 the bodies of Elizabeth Carter and her infant son were found in the burned remains of their home in Michigan City, Indiana. Later examination of the body of Mrs. Carter revealed that she had died of a .22 caliber gunshot wound inflicted prior to the fire.

Police were led to the Appellant through investigation of a .22 caliber revolver which was later determined to be the murder weapon. The Appellant was 16 years old, home on parole from the Indiana Boys School. He lived with his family some 150 feet across the street from the decedent's home.

The majority opinion relies on the right of a juvenile to consult with his parent or guardian before waiving his rights under *Lewis* v. *State*, (1972) 259 Ind. 431, 288 N.E.2d 138. As in *Hall* v. *State*, (1976) 264 Ind. 448, 346 N.E.2d 584, I think that this court is placing too much emphasis on the technicalities of procedure and not enough on the substantive question of whether a confession was intelligently and voluntarily made.

The majority first speculates that police were aware of the Appellant's "limited communicative skills" and limited means. What is really being said is that this young man was mentally defective to the extent that he was taken advantage

of when he was taken into custody. Psychiatric testimony at trial did establish that the mentality of the Appellant was "mild or borderline defective." However, that same testimony concluded that the Appellant could understand his rights if they were explained in sufficiently simple terms. It is uncontradicted that the Appellant's rights were explained to him on several occasions in terms simpler than the written form which was signed by the Appellant. On each occasion the Appellant acknowledged that he understood those rights.

It should also be pointed out that the Appellant completed his education through the eighth grade. This was considered an adequate education not many years ago. This young man was considered to be of sufficient mental capability to be placed at large on parole.

The Appellant was originally held in the Juvenile Detention facilities of the police department upon the orders of his parole officer, James Howard. The initial interrogation occurred on February 18, 1974, from about 11:20 a.m. until 1:15 p.m. The Appellant's uncle was present during this questioning. No information of importance was received by police at this time.

The Appellant was again questioned on February 19, 1974, at approximately 1:40 p.m. The majority opinion concludes that the final interrogation of the Appellant was a continuation of this 1:40 p.m. session. The record reveals, however, that the Appellant was questioned for only five or ten minutes. He denied knowledge of the crimes of which he was suspected and was returned to Juvenile Detention.

The last interrogation of the Appellant was at 4:40 p.m. that same day. His mother, who had been working during the earlier interrogation, was then present. She and her son were once more advised of his *Miranda* rights. The Appellant acknowledged that he understood them. His mother's signature as a witness surely is the most impartial evidence of this acknowledgment. I do not think that this signature

necessarily "obfuscates" her role of advisor to her son. Who would be a better witness? It was from subsequent questioning that the Appellant's admission of guilt resulted. At approximately 7:02 p.m. a statement was typed and simultaneously tape recorded. This tape was heard by the trial court.

The record in this case fails to reveal a single fact which shows any threats of force used against this young man. Police officers and parole officers were no strangers to him. There is no showing that they intimidated him in any fashion. His mother, and his uncle, admonished the Appellant to tell the truth. This the majority seems to think of some significance to prove that this Appellant was taken advantage of. One need only ask what better advice can a mother (or uncle) give to a son (or nephew)? The purpose of consultation with a parent or guardian is not to suppress the truth.

Indeed, an investigation and trial are for the purpose of seeking the truth. I can find nothing in the facts of this case to show that anything other than the truth was presented. The mere fact that one confesses is not in itself proof of threats or coercion. This young man was not a person of "tender age" and information. The trial judge weighed the evidence of voluntariness in this case and we have no right to reweigh it on appeal.

The judgment of the trial court should be affirmed.

Givan, C.J., concurs.

Note.—Reported at 351 N.E.2d 30.