MAURICE TIPPITT AND MAURICE SMITH *v.* STATE OF INDIANA.

(No. 576S165. Filed July 14, 1977.)

*William J. Muha, Daniel G. Hoebeke,* of Highland, for appellants.

*Theodore L. Sendak,* Attorney General, *David L. Steiner,* Deputy Attorney General, for appellee.

DeBRULER, J.—Appellants, Maurice Tippitt and Maurice Smith were convicted of first degree murder, Ind. Code § 35-13-4-1(a) (Burns 1975) and second degree murder, Ind. Code § 35-1-54-1 (Burns 1975) after trial by jury; they appeal their convictions. Appellant Tippitt raises two issues:

(1) whether a statement made by Tippitt, a juvenile, after his arrest, was inadmissible; and (2) whether a statement by Smith, introduced at their joint trial, improperly incriminated Tippitt.

Appellant Smith raises two issues as well:

(3) sufficiency of the evidence of his guilt; and (4) propriety of an instruction on accessory status.

On the night of September 24, 1975, a service station in Gary was robbed by a man with a pistol. The robber shot two service station attendants, one of whom, J. T. Graham, died of the wound.

Appellants and one Frederick Green were jointly charged by indictment with first degree (premeditated) murder and first degree (felony) murder (in the commission of a robbery). Green plead guilty to robbery pursuant to a plea bargain wherein he agreed to testify for the State. Both Smith and Tippitt gave statements to the Gary police during their investigation of the case.

At trial, two attendants of the service station described the robbery and shootings, but neither they nor a customer who arrived during the robbery could identify the robber. Frederick Green described the planning of the robbery by himself and appellants and its execution by himself and Tippitt. Green testified that Tippitt entered the station and performed the actual robbery and shootings while Green watched from outside. Tippitt testified that Green was the robber and that he watched from outside. Smith's participation will be detailed in the section of this opinion considering the sufficiency of the evidence of his guilt.

The jury found both appellants guilty of felony murder as charged by Count II of the information and of second degree murder as included in Count I.

## I.

On October 13, 1975, Detectives Cash and Herma of the Gary Police Department went to the Lake County Jail, where

Tippitt was being held. They took him to Gary police head-quarters and obtained a written confession of his guilt. This confession was admitted at trial over objection that it was obtained from Tippitt, a fourteen year old juvenile, without an opportunity for meaningful consultation with a parent or guardian.

At an in-trial suppression hearing, outside the presence of the jury, the following evidence was developed. Upon meeting Tippitt at the jail, the detectives advised him of his rights. At this point in time, Tippitt was under arrest and being detained in custody. They ascertained that he had, shortly before this date and during this same period of detention, signed a waiver of rights for two other Gary officers after consultation with his mother. The detectives did not inter-rogate Tippitt prior to their arrival at police headquarters. Upon arriving there they telephoned Mrs. Tippitt and re-quested that she come to the station. After this call but before Mrs. Tippitt arrived, Tippitt answered questions about this case, culminating in his admission that he had robbed the station and shot the attendant. Mrs. Tippitt arrived, con-sulted with her son for five or ten minutes, and left to bring him some dinner. The detectives then advised Tippitt and his mother of his rights. Each signed the waiver form. Tippitt gave a confession which was reduced to writing and signed by mother and son. Only this confession, and not the oral admission, was introduced at trial.

In *Lewis* v. *State*, (1972) 259 Ind. 431, 288 N.E.2d 138, we held that the confession of a juvenile suspect is not admissible against him unless he is given an opportunity to consult with a parent, guardian, or counsel prior to waiver of his privilege against self-incrimination. Tippitt argues that his oral admission of guilt was taken with no opportunity to consult with a friendly adult and that this admission vitiated any subsequent consultation so as to render it meaningless. Tippitt cites *Hall* v. *State*, (1976) 264 Ind. 448, 346 N.E.2d 584, in which we held that *Lewis* requires the opportunity for meaningful consultation, free from pressures

which could neutralize the benefit of the parent's presence, and that no meaningful consultation can occur when the youth had already been subjected to the pressures against which that presence is intended to guard. 346 N.E.2d at 587-88.

Here, however, Tippitt had already executed a waiver of his *Miranda* rights, after consultation with his mother, when Detectives Cash and Herma first approached him. The validity of this waiver was never challenged. He was reminded of these rights and freely consented to answer more questions without the presence of his mother. His mother did not request that no interrogation take place without her presence. Under these circumstances the oral statement was not obtained in violation of *Lewis* and Tippitt's reliance on *Hall* is therefore misplaced. Tippitt's confession was properly admitted.

## II.

Tippitt also argues that the statement of appellant Smith improperly incriminated him in contravention of Tippitt's Sixth Amendment right of confrontation, relying on *Bruton* v. *United States*, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

Smith's statement described Tippitt's and Green's roles in the robbery. The trial court admitted the statement with Tippitt's name deleted and replaced with "name omitted." Tippitt contends that this redaction was insufficient to prevent the jury from concluding that he was the person referred to.

We need not decide whether the redaction was adequate, for Smith testified and was available for cross-examination by Tippitt concerning his statement. Under similar circumstances we have held that where a co-defendant testifies and is subject to cross-examination, use of his statement does not deny the defendant incriminated thereby his right to confront the declarant. *Ortiz* v. *State*, (1976) 265 Ind. 549, 356 N.E.2d 1188. There was no error in admission of Smith's statement as to Tippitt.

## III. and IV.

Smith claims that the verdicts against him are not supported by sufficient evidence, and that an instruction given by the trial court defining accessory status and liability incorrectly stated the law. We consolidate these issues because they involve a common question as to the facts necessary to render a person criminally liable as an accessory before the fact.

Indiana Code § 35-1-29-1 (Burns 1975) provides:

> "Accessory before the fact.—Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or information, tried and convicted in the same manner as if he were a principal either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

The trial court's final instruction No. 14 set out this section, adding:

> "To aid under the law is to knowingly aid, support, help or assist in the commission of a crime. It is knowingly doing some act to render aid to the actual perpetrator of the crime."

There is no evidence suggesting that appellant Smith was the man who entered the service station and shot J.T. Graham. The testimony of Green, Tippitt and Smith agrees that Smith was not present at the robbery; one of the eyewitnesses testified that Smith had a conspicuously lighter complexion than the robber.

Green testified that on the night before the robbery Smith had suggested to him that Graham's service station would be easy to rob. Smith said that he had ridden his bicycle past the station and "checked it out." On the night of the robbery, Green, Smith and Tippitt met at Smith's apartment. Smith told Tippitt that Tippitt would enter the station and perform the robbery, using a .22 caliber revolver borrowed from a

friend by Green; Smith gave Tippitt a blue ski jacket to wear. Green offered to accompany Tippitt and "watch his back." Smith gave Green a .32 revolver to carry. Tippitt and Green took the money taken in the robbery to Smith's apartment, where Smith counted and divided it.

Smith testified in his own behalf that Green had suggested the service station robbery. Smith claimed to have refused because he feared that he would be easily identified. Tippitt and Green came to Smith's apartment with the proceeds, leaving Smith thirty dollars. Smith identified the .32 revolver used by Green as coming from his apartment, but denied giving it to Green.

Appellant contends that this record "supports a position that the only way he could have been included as a guilty party is as a *conspirator accessory*." [sic] Appellant has confused and intermingled two separate legal concepts, conspiracy and accessory status.

The gravaman of Smith's argument is that an accessory must intend, by his actions, to cause or facilitate the commission by the principal offender of the crime charged. He contends that the evidence failed to show that he intended that Tippitt and Green rob the service station, and that the above-quoted instruction allowed the jury to convict Smith without proof of intent by defining "aid" as "to knowingly aid, support, help, or assist in the commission of the crime."

Reviewing the evidence most favorable to the jury's verdict, we find that Frederick Green testified that Smith suggested the robbery to Green, that Smith reconnoitered the station, that Smith assigned Green and Tippitt their respective roles in the robbery, that Smith gave Green a revolver and Tippitt a jacket to be used in the robbery, and that Smith divided the robbery proceeds among the three. From this evidence the jury could reasonably find that Smith not only "aided" but "counseled," and "encouraged" Tippitt and Green in the commission of the robbery while armed which resulted in the shooting death of J.T. Graham. The element of intent is not in question, because "counsel" and "encourage" include within

their meaning an intent that what is counseled or encouraged come about. The same evidence which warrants the finding that Smith counseled and encouraged the offense implies that Smith intended to bring about the armed robbery.

Turning to the trial court's challenged instruction, we find that it correctly stated the law relating to accessories. Smith contends that its definition of "aid" as "knowingly doing some act to render aid to the actual perpetrator" allowed the jury to convict him upon proof merely of his foreknowledge that the crime would be committed, which knowledge Smith admits. An accessory, Smith argues, must intend to procure commission of the crime. We understand "knowingly doing some act to render aid to the actual perpetrator" to mean: (1) doing some act, (2) knowing that the act will aid the perpetrator. We are unable to perceive any significant difference between this definition of "aiding" and one requiring the accessory to intend his actions to aid the principal offender, and we cannot believe that the jury would have perceived any.

The convictions of appellants, Maurice Tippitt and Maurice Smith, are affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported 364 N.E.2d 763.