v.

STATE of Indiana, Appellee–Petitioner.

No. 49A02–1004–JV–442.

Court of Appeals of Indiana.

Nov. 29, 2010.

Ellen F. Hurley, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

S.D. appeals his juvenile delinquency adjudication for what would be Class C felony child molesting if committed by an adult. Before S.D. was interviewed about the child molesting allegation, he and his guardian were given time to consult with each other. However, the consultation took place in a room where video cameras were recording, and S.D. and his guardian were aware of that fact. S.D. contends that the admission of his subsequent confession constitutes fundamental error. We conclude that there is fundamental error because S.D. was in custody when he confessed and was not given meaningful consultation with his guardian as required by Indiana's juvenile waiver of rights statute because the video cameras constituted an improper police presence and infringed on the privacy necessary to any meaningful consultation. We therefore reverse.

### Facts and Procedural History

S.D. was born in Kazakhstan and moved to the United States when he was ten or eleven years old. In the late summer of 2009, S.D. was fifteen or sixteen years old and lived in the home of Debbie Spenneberg, his legal guardian. Spenneberg provided daycare in her home for five- or six-year-old J.B. and her younger brother. While in Spenneberg's home, J.B. would remove her clothing, touch her vagina, and ask S.D. and others in the home to look at and rub her "peepee," referring to her vaginal area. Tr. p. 70. When Spenneberg brought these events to J.B.'s mother's attention, J.B.'s mother informed her that she recently discovered that J.B. had been molested by her father.

One day, J.B. told her mother that while she was in Spenneberg's home, S.D. touched her inappropriately. In an interview with the Department of Child Services ("DCS") in September 2009, J.B. said that S.D. had touched her peepee.

In October 2009, the State filed a petition alleging S.D. to be a delinquent child for committing what would be Class C felony child molesting, Ind.Code § 35–42–4–3(b), if committed by an adult. Detective Chris Lawrence began investigating the incident in November 2009. Because the videotape of J.B.'s interview with the DCS could not be produced due to an apparent malfunction, Detective Lawrence requested that the DCS conduct a second interview. During that videotaped interview, J.B. said that her father had touched her peepee. She did not claim that S.D. or anyone else had touched her inappropriately.

Later in November, Spenneberg accompanied S.D. to a videotaped interview at Detective Lawrence's office. The videotapes show that before the interview began, S.D. and Spenneberg sat alone in a twelve-by-twelve-foot interview room and pointed out the cameras in the room. Detective Lawrence entered and asked about general background information for about a half an hour. He then said that J.B. reported that S.D. had touched her in a way that made her uncomfortable. Detective Lawrence told S.D. that he was not under arrest and that he could leave at any time. He advised S.D. and Spenneberg of S.D.'s *Miranda* rights when reviewing an advisement of rights form with them, which they both signed.

Detective Lawrence then said that he would leave the room to allow S.D. and Spenneberg to discuss whether S.D. would agree to talk and whether Spenneberg would stay in the room. When Spenneberg asked S.D. whether he wanted her in

the room, S.D. responded that it did not matter to him. Detective Lawrence insisted on leaving the room while they discussed the matter and left.

Spenneberg again asked S.D. whether he wanted her in the room during the interview, and S.D. again said that it did not matter to him. After a few minutes, Spenneberg knocked on the door, and Detective Lawrence came back into the room. S.D. remained indifferent to Spenneberg's presence, so Spenneberg decided to leave. After S.D. and Spenneberg signed a waiver of rights form, Spenneberg left the room.

During the substantive interview, Detective Lawrence questioned S.D. about J.B. and her allegation. The videotapes show that Detective Lawrence noted that his job is to handle these cases and that he knows when someone is lying to him. At times he stated that he did not think S.D. was being truthful and that S.D. was being given an opportunity to correct a wrong. Near the end of the interview, Detective Lawrence sat close to S.D. and spoke to him in a low voice.

S.D. initially told Detective Lawrence that Spenneberg babysat for J.B. but that he had had no interaction with her. S.D. said that his bedroom was downstairs and he stayed there most of the time. He said that he was never in the kitchen with J.B. and denied that anything could have happened that J.B. might have construed as touching her inappropriately.

A little over an hour into the substantive interview, S.D. changed his story and said that J.B. was with him in the kitchen once. Her pants were down, so S.D. pulled them back up.

After speaking alone with Detective Lawrence for about an hour and a half, S.D. changed his story again. He admitted that he touched J.B.'s vagina with his fingers. Detective Lawrence placed S.D. in handcuffs. The entire interview, including the portions when Spenneberg was present, lasted around two and a half hours.

The day after the interview, S.D. appeared at an initial hearing where the juvenile court approved the State's delinquency petition.

At the denial hearing in February 2010, J.B. testified that she was in Spenneberg's kitchen with S.D. and that S.D. removed J.B.'s pants and underwear, lifted her up onto the kitchen counter, and touched her peepee.

Spenneberg testified that on the day of the alleged incident, she found J.B., S.D., and one of her foster daughters in the kitchen. J.B. was sitting on the kitchen counter crying because she had hurt herself, and S.D. was giving her a hug and telling her it would be okay. Spenneberg also testified that she had non-recording video cameras in her house, that S.D. knew which areas were monitored by the cameras and which areas were not, and that J.B.'s position on the kitchen counter was such that a portion of one of her legs would have been picked up by a camera.

During Detective Lawrence's testimony, S.D. moved to suppress his videotaped statement

> based upon the proximity and, and physicalness (sic) that the detective had and proximity of him being in that room and length of time that [S.D.] was in that room. And his I guess first language not being of the language that the detective had as being coerced and, and an improper statement.

Tr. p. 89–90. After hearing arguments from both parties, watching the videotaped interview, and hearing S.D.'s testimony regarding the motion, the juvenile court denied the motion to suppress. Detective

Lawrence then testified that S.D. confessed to touching J.B.'s vagina.

S.D. offered and the juvenile court admitted into evidence the recording of the second interview between J.B. and the DCS, during which J.B. claimed that only her father had touched her peepee. It was admitted for impeachment purposes only.

S.D. then testified that he had found J.B. in the kitchen crying. J.B. told him her foot hurt, so he picked her up, put her on the kitchen counter, and gave her a hug to comfort her. S.D. testified that he lied during the interview about touching J.B. because:

> I was in there for a long time and I felt closed in and the detective said that if I told him as I think what he wanted to hear and what he was told I guess by other people and the paperwork that he had, that I would go. And I was basically telling him the truth saying that I didn't do it for a long, long time. It didn't seem like he was believing.

*Id.* at 136–37.

The juvenile court entered a true finding for Class C felony child molesting. S.D. now appeals.

### Discussion and Decision

Although S.D. raises several issues on appeal, we find one dispositive and restate it as whether the juvenile court erred by admitting S.D.'s confession when he had not been given meaningful consultation with his guardian as required by Indiana's juvenile waiver of rights statute.

■ During the denial hearing, S.D. challenged the admission of the confession on grounds that it was coerced. A party generally may not object on one ground at trial and raise a different ground on appeal. *N.W. v. State*, 834 N.E.2d 159, 162 n. 2 (Ind.Ct.App.2005) (citing *White v. State*, 772 N.E.2d 408, 411 (Ind.2002)), *trans. denied.* However, the fundamental

error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of the issue on appeal. *Jewell v. State*, 887 N.E.2d 939, 940 n. 1 (Ind.2008). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578, 587 (Ind.2006). The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. *Brown v. State*, 929 N.E.2d 204, 207 (Ind.2010), *reh'g denied.* This exception is available only in egregious circumstances. *Id.* We thus address whether the admission of S.D.'s confession constitutes fundamental error.

S.D. points to the meaningful consultation requirement of Indiana's juvenile waiver of rights statute and argues that he was not afforded meaningful consultation with Spenneberg because the consultation was videotaped.

■ The special status accorded juveniles in other areas of the law is fully applicable in the area of criminal procedure. *Hall v. State*, 264 Ind. 448, 451, 346 N.E.2d 584, 586 (1976). To give effect to that status in the context of waiving intricate, important, and long established Fifth and Sixth Amendment rights, we require that a juvenile be afforded a meaningful opportunity to consult with a parent or guardian before the solicitation of any statement. *Id.* The relevant provision of the juvenile waiver of rights statute provides that any state or federal constitutional rights guaranteed to a child may be waived only:

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver.

Ind.Code § 31–32–5–1; *Bryant v. State,* 802 N.E.2d 486, 493 (Ind.Ct.App.2004), *trans. denied.*

■ However, as a general rule, when a juvenile who is not in custody gives a statement to police, neither the safeguards of *Miranda* warnings nor the juvenile waiver statute is implicated. *Borton v. State,* 759 N.E.2d 641, 646 (Ind.Ct.App. 2001), *trans. denied; A.A. v. State,* 706 N.E.2d 259, 261 (Ind.Ct.App.1999).

■ Thus, the threshold question is whether S.D. was subject to custodial interrogation when he confessed. The parties do not discuss whether S.D. was interrogated. Interrogation has been defined as a process of questioning by law enforcement officials which lends itself to obtaining incriminating statements. *A.A.,* 706 N.E.2d at 261. Here, S.D. was interviewed by Detective Lawrence about J.B.'s allegation that S.D. had molested her. At times Detective Lawrence stated that he did not think S.D. was being truthful and that S.D. was being given an opportunity to correct a wrong. We conclude that S.D. was interrogated by Detective Lawrence.

■ For an interrogation to be custodial in nature, one does not necessarily have to be under arrest. *C.L.M. v. State,* 874 N.E.2d 386, 390 (Ind.Ct.App.2007). To be custodial in the non-arrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. *Id.; see also Luna v. State,* 788 N.E.2d 832, 833 (Ind.2003) ("When determining whether a person was in custody or deprived of his freedom, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (quotations omitted)). This is determined by examining whether a reasonable person in similar circumstances would believe he is not free to leave. *Luna,* 788 N.E.2d at 833.

We acknowledge that Detective Lawrence informed S.D. at the start of the interview that he was not under arrest and that he could leave at any time. *See Fowler v. State,* 483 N.E.2d 739, 742–43 (Ind. 1985) (although juvenile was advised that he was a suspect, he was not in custody where he was told he was not under arrest and could leave at any time and where he was not detained by police after interviews), *reh'g denied.* However, we must look to all the circumstances in this case to determine whether a reasonable person in similar circumstances would believe he was free to leave.

There is no evidence in the record as to whether S.D. and Spenneberg went to the interview voluntarily. In any case, S.D., a juvenile, was interviewed by Detective Lawrence in a twelve-by-twelve-foot room. Detective Lawrence told S.D. that J.B. reported that he had touched her in a way that made her uncomfortable. He also advised S.D. of his *Miranda* rights. *See Ackerman v. State,* 774 N.E.2d 970, 979 (Ind.Ct.App.2002) (advisement of *Miranda* warnings a factor to be considered in determining custody for purposes of *Pirtle*), *reh'g denied, trans. denied.* Detective Lawrence told S.D. that he did not think he was telling the truth and, near the end of the interview, sat close to S.D. and

spoke in a low voice. By the time S.D. confessed, he had been interrogated alone by Detective Lawrence for one and a half hours and had been in the interview room for at least two and a half hours. *See* 2 Wayne R. LaFave et al., *Criminal Procedure* § 6.6(f) (3d ed. 2007) ("[S]urely a reasonable person would conclude he was in custody if the interrogation is close and persistent, involving leading questions and the discounting of the suspect's denials of involvement."). After S.D. confessed, Detective Lawrence placed him in handcuffs. *See Fowler*, 483 N.E.2d at 743 (that suspect was not detained by police after interviews factored into determination that suspect was not in custody).

Given these facts, we conclude that a reasonable person in similar circumstances would not believe he was free to leave. S.D. was thus in custody when he confessed.

Because S.D. was in custody when he confessed, the juvenile waiver statute applies, and S.D. was entitled to meaningful consultation with Spenneberg. *See* Ind. Code § 31–32–5–1(2)(C).

■■■ The meaningful consultation requirement of the juvenile waiver of rights statute is a safeguard additional to the requirement of adult waivers that they be knowingly, voluntarily, and intelligently made. *Cherrone v. State*, 726 N.E.2d 251, 254 (Ind.2000). The purpose of the meaningful consultation requirement is to "afford the juvenile a stabilizing and comparatively relaxed atmosphere in which to make a serious decision that could affect the rest of his life." *Patton v. State*, 588 N.E.2d 494, 496 (Ind.1992).

■■■ Consultation can be meaningful only in the absence of police pressure. *Washington v. State*, 456 N.E.2d 382, 383 (Ind.1983); *see also Hall*, 264 Ind. at 452, 346 N.E.2d at 587 ("[A] meaningful consultation can only occur in the absence of the neutralizing pressures which result from police presence."). Privacy is essential to a meaningful consultation. *See Fowler*, 483 N.E.2d at 743 ("The level of privacy accorded appellant and his mother for their consultation was sufficient to permit discussion on the waiver decision."). The meaningful consultation requirement is met only when the State demonstrates actual consultation of a meaningful nature or the express opportunity for such consultation, which is then forsaken by the juvenile in the presence of the proper authority, so long as the juvenile knowingly and voluntarily waives his constitutional rights. *Cherrone*, 726 N.E.2d at 254.

■■■ Here, Detective Lawrence left the interview room to allow S.D. and Spenneberg to discuss whether S.D. would agree to talk and whether Spenneberg would stay in the room. However, the consultation between S.D. and Spenneberg was videotaped, and more importantly, S.D. and Spenneberg were aware of the video cameras in the room. The State even concedes on appeal, "[I]t was evident from the moment they entered the interview room that both Spenneberg and S.D. were aware that they were being recorded." Appellee's Br. p. 13. We conclude that the video cameras constituted an improper police presence and infringed on the privacy necessary to any meaningful consultation. *See Bryant*, 802 N.E.2d at 494 (consultation not meaningful where police secretly listened to and videotaped consultation between juvenile and his mother).

The State nonetheless points out that, before Detective Lawrence left the room to give S.D. and Spenneberg an opportunity for consultation, S.D. and Spenneberg decided that S.D. would talk, Spenneberg asked S.D. whether he wanted her in the room, and S.D. said that it did not matter to him. The State argues that these facts

"suggest [ ] that neither Spenneberg nor S.D. placed a high premium on a consultation completely free of police presence." *Id.* at 12. However, an equally plausible explanation is that S.D. and Spenneberg did not place a "high premium" on the consultation because, in light of the video cameras, they knew the consultation would not be private. Regardless, the determinative question, which cannot be answered affirmatively on these facts, is whether S.D. was given meaningful consultation or the express opportunity for meaningful consultation, which S.D. then knowingly and voluntarily waived.

The State also argues that because S.D. and Spenneberg were aware that they were being recorded and failed to ask Detective Lawrence to turn off the cameras or move them to a room without cameras, S.D. and Spenneberg "forsook any right they had to not have their consultation taped." *Id.* at 13. We cannot agree that the police properly recorded the consultation between S.D. and Spenneberg merely because S.D. and Spenneberg failed to request an environment free from police presence. The burden is on the State to demonstrate that S.D. and Spenneberg were afforded meaningful consultation. The burden is not on the juvenile to ask for it.

We acknowledge that our decision places a burden on police officers to ensure that interview room video cameras do not infringe upon meaningful consultation when a juvenile is involved. However, in light of the purpose of the meaningful consultation requirement—to provide a juvenile with a "stabilizing and comparatively relaxed atmosphere in which to make a serious decision that could affect the rest of his life"— we cannot say that such a burden is too onerous.

■ We conclude that S.D. was in custody when he confessed and was not given meaningful consultation as required by the juvenile waiver statute. The harm in admitting S.D.'s confession in violation of his right to meaningful consultation is substantial given that the core evidence against S.D. consisted of his confession and J.B.'s testimony that he touched her peepee, which was then impeached with the admission of her second interview with the DCS, where she stated that only her father had touched her inappropriately. Given the dearth of evidence against S.D., we find the admission of S.D.'s confession when he had been deprived of meaningful consultation to be so prejudicial to the rights of S.D. as to make a fair trial impossible. We therefore conclude that the juvenile court's admission of S.D.'s confession constitutes fundamental error.

Reversed.

MAY, J., and ROBB, J., concur.