THOMAS JACKSON CRAIG, JR. *v.* STATE OF INDIANA

[No. 3-977A235. Filed August 17, 1978.]

*Allan Jay Mindel, Reising, Schmidt & Mindel,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Victoria R. Van Duren,* Deputy Attorney General, for appellee.

STATON, J. — Thomas Jackson Craig, Jr., was convicted of assault and battery with intent to gratify and sodomy. He raises two questions for our examination:

(1)  Did the trial court err in admitting Craig's confession?

(2)  Does Craig's sentence constitute cruel and unusual punishment?

We find no reversible error, and we affirm.

### I.

### Evidence

Craig's wife, Nancy Craig, babysat for K.O., a boy of nine years of

age. K.O. became ill at school on March 17, 1976, and since his parents worked during the day in Chicago, K.O. was sent to the Craig home. K.O. had fever, and therefore his parents decided not to take him out into the cold, but rather to leave him at the Craig residence until he was better. K.O. was lying on the Craig sofa after dinner on March 17, 1976. He testified at trial that Thomas Craig, who had been sitting next to him on the sofa, rubbed K.O.'s thigh and put his lips on K.O.'s penis. K.O. went home to his parents' house on March 20, 1976, and, at that time, told his parents about the incident.

Craig was telephoned and was told that K.O.'s parents had given a statement to the police about the incident. Craig was requested to come to the police station. He did, and he was taken to the interrogation room. Craig was read his rights, he was asked if he understood the waiver form, and then Craig signed a waiver. Craig's statement was tape recorded. Several days later, Craig returned to the police station and signed the transcribed statement. In addition to signing the back page of the statement, Craig made corrections and initialed the third page of the four-page statement. Craig was photographed, fingerprinted, and released. Still later, an officer came to the Craig home and asked Craig to reread the statement and sign pages one, two, and three. Craig did so while sitting in a police car in front of his home.

Craig testified at trial. He admitted that the incident with K.O. took place. He stated that he did not dispute the charges. He did maintain that K.O. at no point objected, or he would not have continued. K.O. stated that he did not try to stop Thomas Craig's actions. Evidence was admitted without objection at trial that at least one similar incident had occurred the previous summer when K.O. went camping with the Craigs. K.O. allegedly had told his parents about that incident, but his parents had not confronted Thomas Craig. K.O.'s mother averred that they had determined to try to keep K.O. away from Thomas Craig; they hoped "he'd get the idea." K.O.'s mother did not confront Nancy: "I didn't know if she knows about it or not. I didn't want to upset her."

Thomas Craig admitted at trial that what he did was wrong. Craig is a high school graduate, was employed as a supervisor in an engineering test lab, and had been involved in his community with scouting. He testified that K.O. was the only person toward whom his "weakness"

had manifested itself. Along with the guilty verdicts, the jury passed a handwritten note to the judge:

"May we the jury make a recommendation? We would like to recommend professional help for both Thomas Jackson Craig, Jr. and [K.O.]."

Craig moved that he be examined as a possible criminal sexual deviant. The trial court granted the motion, and Craig was committed to the Indiana Department of Mental Health for observation and treatment. The court then held a full medical hearing. Evidence was admitted at that hearing that Craig was a treatable criminal sexual deviant, that Craig was not violent, that rehabilitation through outpatient therapy was recommended, and that group therapy in an enclosure like maximum security could cause Craig's condition to worsen—"decompensate as psychotic."

At the close of the medical hearing, the trial court made the following finding and judgment:

"[T]his is State of Indiana versus Thomas Jackson Craig Jr. Show appearances of parties involved. The defendant tendered defendant's Exhibit A which is a revision of the report of the staff at Dr. Norman M. Beatty Memorial Hospital indicating to the court that their assessment of the defendant has been revised to find that the defendant is a criminal sexual deviant within the meaning of the act that he is treatable as a criminal sexual deviant at a facility maintained and supervised by the Department of Mental Health in the State of Indiana, and therefore meets the two (2) part qualifications for treatment as a criminal sexual deviant. The defendant is now committed to the Indiana Department of Mental Health for a period of time not to exceed an indeterminate prison sentence, or not to exceed an indeterminate prison sentence of not less than 2 nor more than 14 years and he is placed in the care of the Department of Mental Health for assignment to the proper state institution to be either confined in a state psychiatric institution or treated by an approved facility consistent with the report previously submitted to the court. . . . This is a final judgment as I understand the act."

## II.

### Voluntariness of Confession

Craig's argument concerning the admission of his confession is premis-

ed in the notion that it was not given *voluntarily* in the strict legal sense of that word. Craig concedes that his rights were read to him prior to the time his statement was tape-recorded at the police station. Craig admits that he signed the waiver form. An officer testified that Craig stated that he understood the import of the waiver. However, Craig points out that the record is completely silent as to any advisement of rights directly before the transcribed statement was signed. He particularly argues that the lapse of several days between the original warnings and the signing of the confession (along with the even later corrections and signing of individual pages) rendered the confession inadmissible.

The issue presented by Craig's argument is whether a second *Miranda* warning is necessary immediately before the signing of a written statement which had been given orally and recorded on tape. Our examination of this issue must begin with *Miranda v. Arizona* (1966), 384 U.S. 436. Most of Craig's appellate argument focuses upon the signing of the waiver form. Craig undertakes to convince this Court that he did not knowingly waive his rights. The record convinces us that the contrary is true. The examining officer orally read the waiver of rights document to Craig. He asked Craig whether he understood the document. Craig responded that he did; Craig reread the document and signed it. We hold that the record discloses sufficient evidence to support a findng that the waiver was an intelligent one. *Garrett v. State* (1976), 265 Ind. 63, 351 N.E.2d 30, *Hedgecough v. State* (1975) 164 Ind.App. 224, 328 N.E.2d 230.

The waiver was signed and dated March 22, 1977. The exact date that the confession was signed is not in the record, but the examining police officer testified that it was "several days later." Craig was not re-advised of his constitutional rights at this later time. Before the trial court admitted the confession, the court considered the problem:

> "That is the issue, whether or not Miranda had to be given every time the same document is presented. Well, it is not the same document, you see, they went through the questioning process after adequate warning.

> "I haven't seen Exhibit A. There has been no question raised as to the adequacy of the warning. The only questions being raised, how long do those warnings last in a person's mind, days or

hours and appraised of his constitutional rights and did he voluntarily give them up at the time he entered the confession or signed the confession which is attempted to be entered into evidence today.

\* \* \*

"So you see what he is saying? Is that there is a time limitation on the Miranda warnings originally given and I intend to agree with that. Only question is how long do they last?

\* \* \*

"I would have to rule as a matter of law that the Miranda warnings expire within blank hours after they are given. And then fill in the blank with what I consider to be a reasonable length of time because there is no evidence that the defendant forgot what they were or that he didn't remember what they were and did not know at the time he signed that confession what they were.

"Therefore, since they were properly given in the first place, I have to say that as a matter of law, they expire after so many hours or so many days.

\* \* \*

"Well, at whatever time the Miranda warnings expire as a matter of law, I guess we will have to let the Appellate Court tell us because I am ruling as a matter of single transaction from the initial interrogation to the ultimate signing of the document and the time contained in the interum [*sic*] for its preparation that the warnings that were given . . . are sufficient to cover the entire transaction insofar as it is covered in this particular case."

We agree that the warnings were sufficient. In doing so, we cannot entirely endorse the reasoning of the trial court. We do not believe that there is a time limitation on *Miranda* warnings. But because this question was adequately preserved for a ruling on appeal, and because the question may arise again in other criminal cases, we shall set out the relevant factors which must be considered.

There is no fill-in-the-blank provision as to the number of hours or days that a warning remains valid. If the oral statement immediately follows the warning, it does not lose any of its voluntary qualities simply because it is later reduced to a written statement. Admittedly, the better practice is to re-advise the defendant of his *Miranda* rights before requesting that he sign a written statement which has been transcribed from a tape made several days earlier;

however, this is not necessary to the voluntariness requirement which affects the admissibility of the statement. If the defendant signs the statement, as Craig did, the statement is admissible. Later, the defendant may deny some parts of the statement as being inaccurate, but this denial of the statement's accuracy goes to the question of credibility and not voluntariness. Voluntariness is determined only during the time that the warning is given to the defendant and during the time that the statement is initially given by the defendant. Any later change in the form of recording the same statement from tape to a typewritten statement does not affect its voluntariness.

The trial court did not commit reversible error when it admitted the confession.

### III.

### Cruel and Unusual Punishment

Craig maintains that because the trial court's judgment allows for the possibility that he will be institutionalized rather than offered outpatient treatment, and because there was medical testimony that institutionalized treatment could cause Craig to "decompensate as psychotic," such a sentence constitutes cruel and unusual punishment.

We disagree. Craig was examined and found to be a criminal sexual deviant. The controlling statutes are IC 1971, 35-11-3.1-17 and 35-11-3.1-18:

> "35-11-3.1-17 [9-4017]. Report of department—Effect of conclusion of treatable sexual deviancy.—If the report of the department concludes that the alleged criminal sexual deviant is a criminal sexual deviant and is treatable, the court may determine the question of criminal sexual deviancy in accordance with such findings and commit the person to the care of the department to be *either confined in a state psychiatric institution or treated by an approved facility, consistent with the report.*" (Emphasis added.)

> "35-11-3.1-18 [9-4018]. Recommendation of appropriate psychiatric facility for treatment of deviant.—The department, through its superintendent or the director of an approved facility, *shall recommend to the court the psychiatric facility to which the criminal sexual deviant should be committed for treatment.* Such recommendation shall be based, after thorough evaluation and diagnosis of the person to be committed, upon the type of treatment from which

the person will best benefit, and the amount of threat or danger that such person poses to the community." (Emphasis added.)[1]

The trial court, in its judgment, committed Craig in strict compliance with the language of IC 1971, 35-11-3.1-17 (Burns Code Ed.). The department, then, designated Dr. Norman N. Beatty Memorial Hospital, Maximum Security Division, as the place for confinement; the court ordered the sheriff to transport Craig to Beatty Hospital. No more was required.

Initially, we do note that Craig possessed no abstract right to rehabilitation, and the failure to provide rehabilitation would not, by itself, constitute cruel and unusual punishment. *See McCray v. Sullivan* (5th Cir., 1975), 509 F.2d 1332, *cert. denied* 423 U.S. 859; *French v. Heyne* (7th Cir., 1976), 547 F.2d 994. But, moreover, much discretion is vested in the trial court concerning a determination of criminal sexual deviancy. We will review only for abuse of that discretion. *Biggs v. State* (1975), 167 Ind.App. 181, 338 N.E.2d 316. We have been shown no abuse.

While we would agree with Craig that the legislature contemplated outpatient treatment as an alternative within the Criminal Sexual Deviancy Act, the final decision regarding its election rests within the Department of Mental Health. And, even though there was a great deal of testimony at Craig's medical hearing to the effect that the treatment of choice would be on an outpatient basis, this Court is not in a position to review the formal designation made by the department. The department had the option of assigning Craig to an approved facility (IC 1971, 35-11-3.1-1[e], Burns Code Ed.) for outpatient treatment. Its ultimate decision to commit Craig to institutional care is not reversible upon appeal.

We affirm.

Robertson, J. (by designation) concurs;

Garrard, P.J., concurs.

NOTE—Reported at 379 N.E.2d 490.

---

1. In 1977, the legislature added an additional requirement:

"If the court commits the person to a facility, it shall be the one recommended by the department." IC 1971, 35-11-3.1-18 (Burns Code Ed., Supp. 1977).