> "The estate tax is not based on the value of the reversionary interest of the decedent at the time of his death but on the value at the time of his death of the property to which that reversionary interest relates. It makes no difference how vested may be the remainder interests in the corpus or how remote or uncertain may be the decedent's reversionary interest. If the corpus does not shed the possibility of reversion until at or after the decedent's death, the value of the entire corpus on the date of death is taxable."

S. L. B., Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 3-1281A308.

Court of Appeals of Indiana, Third District.

April 29, 1982.

Susan K. Carpenter, Public Defender, Frances L. Watson, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

S.B. had been diagnosed an alcoholic before she appeared in Elkhart County Juvenile Court on March 10, 1981 and was adjudicated a delinquent pursuant to a delinquency petition charging her with theft. She was placed on probation and ordered to be placed at Faith House. She left her placement at Faith House and was arrested on a bench warrant. As a result, she spent time at the Elkhart County Security Center and while in detention assaulted a staff member. The staff member sustained approximately twenty blows, two cracked front teeth, one loose tooth, bleeding behind the left eye, and a spleen injury. S.B. was placed in Lutheran General Hospital for treatment from March 19, 1981 through April 14, 1981.

S.B. again appeared in court on April 21, 1981. As a result of her probation violation and the battery, she was again adjudicated a delinquent and the court ordered her committed to the Indiana Girls' School. The commitment was suspended and she was continued on probation. She was placed at Gateway House in Chicago, Illinois. At that time she was warned by the court that if she failed at Gateway House, the only alternative would be the Indiana Girls' School.

S.B. ran away from Gateway House three times and after the third time, a bench warrant was issued for her arrest on August 17, 1981. After speaking with the probation department, she turned herself in on August 26 and the next day appeared in court. S.B.'s counsel indicated that he had spoken to her about the matter earlier in the day and communicated her desire to return to her home. The probation department reported that Gateway House did not want S.B. back and that other options for placement were lacking. A friend of S.B.'s asked that S.B. be placed with her and her husband, but the court refused. The court then set aside its suspension of the commitment to the Indiana Girls' School and ordered S.B. committed until the age of twenty-one.

The sole issue presented for review in this appeal is whether the juvenile court erred in failing to give notice of the grounds to be relied upon and an opportunity to be heard before executing S.B.'s previously suspended commitment and thereby failing to satisfy requirements of due process.

IC 1971, 31–6–7–16 (Burns 1980 Repl.) provides:

"Modification of judgment.—

(a) While the juvenile court retains jurisdiction under IC 31–6–2–3, it may modify any dispositional decree upon its own motion, or upon the motion of the child, the child's parent, guardian, custodian, or guardian ad litem, the probation officer, the caseworker, the prosecutor, the attorney for the county department, or any person providing services to the child or his parent, guardian, or custodian under a decree of the court.

(b) If the petitioner requests an emergency change in the child's residence, the court may issue a temporary order. However, the court shall then give notice to those persons affected and shall hold a hearing on the question if requested. If the petition requests any other modification, the court shall give notice to those persons affected and may hold a hearing on the question. If a hearing is required, IC 31–6–4–15 governs the preparation and use of a modification report. This report shall be prepared if the state or any person other than the child or his parent, guardian, guardian ad litem, or custodian is requesting the modification."

The statute requires notice, but says nothing of *written* notice specifically setting forth the grounds to be relied on.

■■■ S.B. asserts that her right to due process was violated. The standard for determining what due process requires in a particular juvenile proceeding is "fundamental fairness." *Clemons v. State* (1974), 162 Ind.App. 50, 317 N.E.2d 859, *cert. denied* 423 U.S. 859, 96 S.Ct. 113, 46 L.Ed.2d 86. While written notice containing the alleged grounds, might be preferable, the fundamental fairness standard was met in this instance and S.B. was given due process.

The record shows that S.B. was present in court with counsel on April 21, 1981 when she originally received the suspended commitment to the Indiana Girls' School. At that time she was warned by the court:

> "The other thing, [S.B.], is that I am going to make a suspended commitment to the Indiana Girls' School. I do that because. you have to know and understand that if you fail at Gateway House or any type of similar facility, then the Indiana Girls' School is the only thing I've got left."

*Record* at 112.

Before the August 27 hearing, she discussed the matter with the probation department. She was present at the August 27 hearing, with counsel, who indicated he had discussed the matter with S.B. earlier in the day. At the start of the hearing, the court stated:

> "All right, [S.B.], you are here because I received a report that you had left Gateway House, and issued a bench warrant for your re-arrest."

*Record* at 120.

If it came as any surprise to S.B. why she was there, she could have expressed it at that time and moved for a continuance. Yet the record reflects no objection. S.B. was well aware of the purpose for which she was called before the court and fundamental fairness was served.

Likewise, S.B. was not denied her opportunity to be heard. The juvenile court held a hearing before executing the previously suspended commitment. At that time, it once again heard evidence. S.B. was present and her position was expressed through her counsel. She offered no justification or defense, but merely communicated her desire to return home. S.B.'s right to due process was not violated.

Having found no reversible error, the order of the juvenile court is affirmed.

Affirmed.

GARRARD, J., concurs in result.

STATON, J., concurs in result with opinion.

STATON, Judge, concurring in result.

I concur in the result reached by Judge Hoffman. However, I cannot agree with Judge Hoffman that written notice is merely "preferable." Although juveniles are not entitled to all of the constitutional guarantees afforded to adult criminals, they are nonetheless entitled to due process safeguards. *In Matter of Jennings* (1978), Ind. App., 375 N.E.2d 258, 260; *Bible v. State* (1970), 253 Ind. 373, 254 N.E.2d 319; *In Re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. Proper notice is within the due process protection afforded juveniles.[1]

Since proper notice must be given to juveniles, this Court must address the question: What notice is necessary when probation for juveniles is revoked? For adult criminals, due process safeguards required for revocation of parole are also required for revocation of probation. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. Minimum due process requirements at the parole revocation hearing are: a) written notice of the claimed violations; b) disclosure of evidence against the parolee; c) opportunity to be heard in person and to present evidence; d) the right to confront and cross examine adverse witnesses; e) a neutral hearing body; and f) a written statement of the decision. *Hawkins v. Jenkins* (1978), Ind., 374 N.E.2d 496, 500 and *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 2595; 33 L.Ed.2d 484.

It is well established that juveniles must be afforded due process protection. It is also well established that due process for revocation of parole includes written notice. I must conclude that written notice is required for probation revocation hearings for juveniles.

1. *Gault* held that for juvenile delinquency proceedings to comply with due process requirements, notice must be written notice, given sufficiently in advance of scheduled court proceedings to allow reasonable opportunity for preparation, and setting forth the alleged misconduct with particularity. *Gault, supra* at 1446.