# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 25 2018, 11:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joann M. Price
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re: K.M.M., | January 25, 2018 |
| *Appellant-Respondent,* | Court of Appeals Case No. 45A03-1706-JV-1267 |
| v. | Appeal from the Lake Superior Court, Juvenile Division |
| State of Indiana, | The Honorable Thomas P. Stefaniak, Judge |
| *Appellee-Petitioner* | The Honorable Jeffrey Miller, Magistrate |
| | Trial Court Cause No. 45D06-1703-JD-134 |

**Altice, Judge.**

## Case Summary

[1] K.M.M. appeals from the trial court's decision to commit him to the Department of Correction (DOC) for having committed an act that would be Class A misdemeanor dangerous possession of a firearm if committed by an adult. K.M.M. presents two issues for review:

> 1. Whether the trial court violated K.M.M.'s due process rights when, after taking disposition under advisement to await an updated psychological evaluation, the trial court entered a disposition order without holding another hearing?

> 2. Did the juvenile court abuse its discretion in committing K.M.M. to the DOC?

[2] We affirm.

## Facts & Procedural History

[3] On February 27, 2017, the State alleged that sixteen-year-old K.M.M. was a delinquent child for having committed acts that would constitute Class A misdemeanor dangerous possession of a firearm if committed by an adult, Level 5 felony theft if committed by an adult, and Class B misdemeanor possession of marijuana if committed by an adult. An initial hearing was held on March 3, 2017, and counsel was appointed for K.M.M. At the start of an April 18, 2017 hearing, K.M.M.'s counsel informed the court that an agreement had been reached, pursuant to which K.M.M. would admit to the act of dangerous possession of a firearm, the remaining allegations would be barred, and

disposition would be left to the juvenile court. K.M.M.'s attorney also advised the court that the parties would "argue disposition." *Transcript* at 5. After K.M.M. admitted to the act of dangerous possession of a firearm, the juvenile court turned to disposition.

[4] The court first inquired of a probation officer, who recommended that K.M.M. be re-committed to the DOC. The probation officer explained the basis for this recommendation as follows:

> [K.M.M.] has been afforded numerous services. He was on intensive probation level 2 which he failed. He had just recently returned from the [DOC] a little over a month ago when the new referral came in. He's had counseling, drug testing, time at the Lake County Juvenile Center, formal probation, drug testing. All these services that have been in place haven't precluded him from re-offending. I believe, this is his third referral for a firearm. Probation does not believe that any time back in the community would be a benefit to him.

*Id*. at 6-7. The State agreed with the probation department's recommendation, further noting that the present referral was K.M.M.'s sixth referral to the court for delinquencies.

[5] In response, K.M.M.'s counsel pointed out that K.M.M. was enrolled in high school and that his mother was willing to be responsible for him if he were placed with her. While acknowledging that the firearm offense "is not anything trivial," counsel noted that K.M.M. had accepted responsibility and that he had already been detained for forty-seven days. *Id*. at 7. Counsel requested that the

court place K.M.M. on home detention with his mother or in an alternative residential placement instead of the DOC.

[6] K.M.M.'s therapist was also present at the hearing and the trial court asked for his perspective. The therapist explained that he had worked with K.M.M. for approximately three weeks prior to the instant referral and that they "were still in the stages of setting goals, helping [K.M.M.] understand what his expectation is in the community." *Id*. at 8. He further explained to the court that K.M.M. reported feeling "unsafe" because "[p]eople . . . were coming after him based off of some choices he made in the past. So he kind of felt the need to have a gun." *Id*. K.M.M. also talked to his therapist about having anger management issues. The therapist mentioned that K.M.M. had presented the option of moving to Indianapolis to live with his cousin, which the therapist believed could be beneficial if it helped K.M.M. feel safer and prevent him from re-offending by possessing a firearm. "But," the therapist added, "if he has anger issues . . . then that's something that has to be addressed so he wouldn't feel the need to do such extreme things when upset." *Id*. at 9.

[7] The court then sought input from K.M.M.'s parents. K.M.M.'s father believed that "[i]f [K.M.M.] gets in a better area, it would all work out for the best." *Id*. K.M.M.'s father stated that he lived in a "better area" and that when K.M.M. stayed with him he did not get in trouble. *Id*. K.M.M.'s mother requested that K.M.M. be placed with her, but she also acknowledged that having K.M.M. live with his cousin (her nephew) in Indianapolis was an option, although not

the one she preferred.  Later in the hearing, the court was informed that K.M.M.'s cousin was on probation for an unspecified offense.

[8] The juvenile court then inquired as to whether there was a psychological evaluation for K.M.M.  The probation officer indicated that K.M.M. had completed one in 2015.  The court then addressed K.M.M.'s counsel:

> THE COURT:  Two years old.  He was 14, 15 at the time? Would you object to me having Doctor Ruff talk to him and try to update the psychological?  Maybe not do a full psychological, Counsel?
>
> [K.M.M.'s COUNSEL]:  No, Your Honor.
>
> THE COURT:  All right, . . . I'll talk to Doctor Ruff.  I'll order an updated psychological.  I don't think we need to do a full one, but maybe update and see if – where he was at – where he's at now from then to now and see if there's any changes in regards to that.

*Id*. at 12.  The juvenile court then heard evidence from a police officer that K.M.M. was a documented gang member in Hammond.

[9] The juvenile court concluded the disposition component of the hearing by taking the matter under advisement.  Later that day, the juvenile court entered an order accepting K.M.M.'s admission and adjudicating K.M.M. a delinquent. The court noted in this order that K.M.M. was "to have an updated psychological evaluation by Dr. Ruff" and that the court was taking "disposition under advisement."  *Appellant's Appendix Vol. 2 at 3.*

[10] On May 9, 2017, the juvenile court entered a disposition order in which it noted the April 18 disposition hearing and that it had "read the updated Psychological Evaluation." *Id.* at 5. The court ordered K.M.M. committed to the DOC and recommended that K.M.M. complete anger control classes and drug/alcohol counseling. The court also recommended that the DOC determine whether K.M.M. meets the criteria for parole supervision. K.M.M. now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### Due Process

[11] K.M.M. argues that the juvenile court violated his right to due process when it denied him the opportunity to be heard. Specifically, he claims that the court's act of taking the matter of disposition under advisement pending an updated psychological evaluation implied that there would be further proceedings at which he could be heard before a final decision was rendered. K.M.M. maintains that he was not provided with the updated psychological evaluation and was not given an opportunity to refute any findings therein prior to the court entering the dispositional order. The standard for determining what due process requires in a particular juvenile proceeding is "fundamental fairness." *D.A. v. State*, 967 N.E.2d 59, 64 (Ind. Ct. App. 2012) (quoting *S.L.B. v. State*, 434 N.E.2d 155, 156 (Ind. Ct. App. 1982)).

[12] Ind. Code § 31-37-18-1.3 requires that the juvenile and his or her parents or guardians have notice and an opportunity to be heard and make

recommendations to the court regarding disposition. Here, the parties clearly understood that disposition would follow immediately after K.M.M.'s admission. Indeed, it was K.M.M.'s attorney who informed the court that the parties would "argue disposition." *Transcript* at 5.

[13] After K.M.M. admitted to the allegation and explained the circumstances of his dangerous possession of a firearm, the court requested recommendations as to disposition and the hearing thereafter focused on dispositional alternatives. The court heard testimony from a probation officer[1] and K.M.M.'s therapist. The court also heard from both of K.M.M.'s parents and questioned them about their recommendations for disposition. Upon inquiry, the court was informed that K.M.M. had completed a psychological evaluation two years earlier. K.M.M.'s counsel expressly indicated that there was no objection to the court's request for an updated psychological evaluation to see if there were any changes over the interim period. The court then informed the parties that it was taking the matter of disposition "under advisement. I'm going to get an updated psych for him and make a determination with what, what we'll do next." *Id.* at 13.

---

[1] The chronological case summary indicates that the probation officer's report was filed with the court on or about April 12, 2017. The probation officer was present at the disposition hearing and at no point did K.M.M. object on grounds that he had not been provided with a copy of the probation officer's report filed six days earlier. K.M.M.'s conduct at the hearing also indicates that he was fully aware of the probation department's recommendation. He did not object for want of notice of the report's contents or make a record indicating that the juvenile court did not perform its statutory duty to make the dispositional report available within a reasonable time before the hearing. *See* I.C. § 31-37-17-6(b).

[14] A full dispositional hearing was held at which K.M.M., represented by counsel, and his parents were present. K.M.M. did not request to cross-examine the probation officer or his therapist concerning their recommendations. Rather, his parents testified, providing the court with their recommendations for disposition. Further, the court was informed that K.M.M. had previously submitted to a psychological evaluation. K.M.M. lodged no objection to the consideration of such and expressly stated that he did not object to the court's request for an updated evaluation to consider any changes that may have occurred in the two years since the prior evaluation was completed. The State and K.M.M. had nothing further to add with regard to disposition. Upon receiving the updated psychological evaluation, the court issued its dispositional order. The court followed the recommendations of probation and the State and rejected the alternative dispositions desired by K.M.M.'s parents. K.M.M. has not shown that the fact that the court did not hold another hearing after receiving the updated psychological evaluation violated fundamental fairness.

## Disposition

[15] K.M.M. argues that the juvenile court abused its discretion in ordering that he be committed to the DOC.

> [T]he choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of

the community, and the policy of favoring the least harsh disposition. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. Hence, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles.

*R.A. v. State*, 936 N.E.2d 1289, 1291 (Ind. Ct. App. 2010) (citations and quotations omitted).

[16] At the April 18 disposition hearing, the court was informed that this was K.M.M.'s sixth referral and third for dangerous possession of a firearm. K.M.M. had been afforded numerous services, including counseling, drug testing, formal probation, and commitment to a juvenile center, and he had failed intensive probation. He had been released from the DOC for a little over a month when he was picked up on the instant allegation. The State agreed with probation's recommendation that K.M.M. be committed to the DOC. The probation officer did not believe that "any time back in the community would be a benefit to [K.M.M.]" *Transcript* at 7. K.M.M.'s therapist noted that placement where K.M.M. felt safe (referring to possible placement in a different area) could be a possibility, but noted that his anger issues would first have to be addressed. Based on this record, we cannot say that the juvenile court abused its discretion in ordering that K.M.M. be committed to the DOC with recommendations that he complete anger control classes and complete drug/alcohol counseling.

[17]     Judgment affirmed.

[18]     May, J. and Vaidik, C.J., concur.