

FILED

Aug 08 2018, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.M.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

August 8, 2018

Court of Appeals Case No.
49A02-1711-JV-2708

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Gary Chavers, Magistrate

Trial Court Cause No.
49D09-1710-JD-1487

**Darden, Senior Judge.**

## Statement of the Case

[1]  D.M. appeals the juvenile court's disposition of his case following a determination that he is a juvenile delinquent.  We affirm.

# Issue

D.M. raises one issue, which we restate as: whether the juvenile court committed fundamental error by its failure to specifically ask D.M. whether he wanted to address the court to make a statement in allocution at the dispositional hearing.

# Facts and Procedural History

On October 19, 2017, the State submitted to the juvenile court a petition alleging that seventeen-year-old D.M. was a delinquent child for committing an act that, if committed by an adult, would have amounted to battery by bodily waste, a Level 6 felony. The State alleged that D.M. threw a cup of urine at an employee of the juvenile facility where he was being detained. The juvenile court found probable cause to support the State's petition and approved it for filing.

Next, the parties executed an admission agreement, wherein, D.M. agreed to admit that he committed the act described by the State in the delinquency petition. The parties further agreed that final disposition of the matter would be left to the discretion of the juvenile court, with both sides free to present argument. The juvenile court accepted the admission agreement and determined that D.M. was a juvenile delinquent.

The juvenile court then held a dispositional hearing on November 3, 2017. Both the State and the probation department recommended to the juvenile court that wardship of D.M. be granted to the Indiana Department of

Correction (DOC). By contrast, D.M., through his attorney, asked that D.M. be released to probation as the least restrictive and most safe environment, and to remain with his family. D.M.'s attorney further submitted a proposed community supervision plan and argued for the juvenile court's approval.

[6] At that point, D.M.'s attorney stated, "I'll defer to any comments today your Honor for – that [D.M.] or his family may have." Tr. Vol. II, p. 7. The juvenile court specifically asked D.M.'s mother if she wanted to make a statement, and she declined. The juvenile court did not specifically ask D.M. if he wanted to make a statement. Rather, the juvenile court then announced its disposition, granting wardship of D.M. to the DOC for a period of time up to his twenty-first birthday, unless released earlier by the DOC. The juvenile court further stated that it would recommend that the DOC release D.M. after twelve months, thus showing some compassion, but the length of D.M.'s wardship would be left to the discretion of the DOC. This appeal followed.

## Discussion and Decision

[7] D.M. argues that the juvenile court deprived him of his right to due process of law under the Fourteenth Amendment by failing to specifically ask him if he wanted to address the court prior to announcing its disposition of the case. D.M. concedes that he failed to raise this issue in the juvenile court and is entitled to reversal only if he demonstrates that the court's omission amounted to fundamental error. Reply Br. p. 4.

[8] Fundamental error is an "'extremely narrow exception'" to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. *Neville v. State*, 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012) (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)), *trans. denied*. Fundamental error occurs when an error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the error deprives a party of fundamental due process. *S.D. v. State*, 937 N.E.2d 425, 429 (Ind. Ct. App. 2010), *trans. denied*. The fundamental error exception is available only in egregious circumstances. *Id.*

[9] In criminal cases involving adults, a defendant's right to offer a statement on his or her behalf before the trial court pronounces sentence is known as the right of allocution, which has been recognized in the common law since at least 1682. *Vicory v. State*, 802 N.E.2d 426, 428 (Ind. 2004). As a general rule, "[t]he standard for determining what due process requires in a particular juvenile proceeding is 'fundamental fairness.'" *D.A. v. State*, 967 N.E.2d 59, 64 (Ind. Ct. App. 2012) (quoting *S.L.B. v. State*, 434 N.E.2d 155, 156 (Ind. Ct. App. 1982)). The General Assembly has specifically explained who must be allowed to speak at juvenile dispositional hearings, as follows:

> (a) The prosecuting attorney or probation department of the juvenile court shall provide notice of the date, time, place, and purpose of the dispositional hearing under this chapter to each:
>
> (1) party or person for whom a summons is required to be issued under IC 31-37-12-2; and

(2) foster parent or other caretaker with whom the child is placed for temporary care;

at the time the dispositional hearing is scheduled.

(b) The court shall:

(1) provide a person who is required to be notified under subsection (a) an opportunity to be heard; and

(2) allow a person described in subdivision (1) to make recommendations to the court;

at the dispositional hearing.

Ind. Code § 31-37-18-1.3 (2007). Indiana Code section 31-37-12-2 (2015) requires a juvenile court to issue summons to the child, the child's parent, guardian, custodian, or guardian ad litem, and "any other person necessary for the proceeding."

[10] We find it to be indisputable that the better practice in this case would have been for the juvenile court to have specifically asked D.M. if he wanted to make a statement before pronouncing disposition of the case. It would not have taken more than a few minutes and would have ensured that the court directly heard one of the most important perspectives—that of the juvenile. As has been stated in criminal cases, "'The right of allocution is minimally invasive of the sentencing proceeding; the requirement of providing the defendant a few moments of court time is slight.'" *Vicory*, 802 N.E.2d at 429 (quoting *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir. 1991)). However, our analysis does not end here. We must look at the totality of the facts and circumstances in this

case in determining whether the trial court denied D.M. fundamental fairness herein.

[11] After reviewing the arguments and recommendations of both parties, and taking into consideration the totality of the facts and circumstances herein, we cannot conclude that the juvenile court's failure to specifically ask D.M. if he wanted to make a statement prior to disposition amounted to fundamental unfairness requiring reversal. During the dispositional hearing, it appears that D.M.'s attorney vigorously argued in favor of placing D.M. on probation and submitted a plan for the juvenile court's review. The plan provided, among other provisions, that D.M. would live with his mother, who would supervise him and agreed to report D.M. to a probation officer if he violated any terms of probation. It does not appear that D.M. was substantially harmed by not being given an opportunity to personally address the court at the hearing. *See S.L.B.*, 434 N.E.2d at 157 (juvenile court did not violate juvenile's due process rights by not asking if she had a statement; juvenile's attorney presented argument to the court).

[12] Further, D.M.'s juvenile record is extensive, and it is thus highly unlikely that allocution by D.M. would have persuaded the juvenile court to release him to probation or some other commitment less strict than the DOC. D.M.'s record began at age thirteen, when he was found to be a runaway. In 2014, D.M. was determined to be a juvenile delinquent for two acts of resisting law enforcement, both Class A misdemeanors, and criminal mischief, also a Class A misdemeanor. In 2015, he was adjudicated a juvenile delinquent for

committing an act that, if committed by an adult, would have constituted Level 5 felony robbery. In the current case, he admitted to committing an act of battery by bodily waste while in juvenile detention. Further, while he was being detained for the current case, the State alleged D.M. committed another juvenile act, specifically battery resulting in injury to a public safety official. D.M.'s misconduct is ongoing and escalating in severity.

[13] In addition, juvenile courts had imposed less restrictive alternatives than the placement in DOC in the past, but D.M. persisted in his course of misconduct. He was placed on formal probation in 2014, but he failed to comply with the terms of probation and he was sent to an out-of-home placement. In 2015, D.M. was returned to the out-of-home placement at the conclusion of another juvenile case, but he violated the terms of his placement and was sent to the DOC for fourteen months. Upon his release, he fled from another placement and was sent to juvenile detention.

[14] Finally, D.M.'s proposed probation plan stated that he would live with his mother and be subject to her oversight, but she had previously told probation officers that D.M. had refused to comply with her curfews and had frequently left home without permission. Based on this record, the juvenile court had ample reason to conclude a placement less restrictive than the DOC would not succeed, and it is unlikely D.M. could have changed the court's mind via a personal statement at the dispositional hearing.

We conclude that under the particular facts and circumstances of this case, the juvenile court's failure to specifically ask D.M. if he wanted to make a statement was not a blatant violation of basic principles, did not pose a potential of substantial harm, and did not deprive D.M. of fundamental due process. We thus decline to apply the doctrine of fundamental error and/or fundamental fairness in considering D.M.'s due process claim. On the other hand, we strongly encourage juvenile courts to take into consideration affording juvenile delinquents the opportunity to address the court before final disposition.

## Conclusion

For the reasons stated above, we affirm the judgment of the juvenile court.

Affirmed.

Pyle, J., and Altice, J., concur.